**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JONATHON GOLDMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PELOTON INTERACTIVE, INC., and DOES 1-10, Inclusive,<br><br>Defendants. | CASE NO.  2:19-cv-04968-AB-AS<br><br>Judge: Hon. André Birotte, Jr.<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT:**<br><br>1.  VIOLATION OF N.Y. GEN BUS. LAW § 349, ET SEQ.<br><br>2.  VIOLATION OF N.Y. GEN BUS. LAW § 350, ET SEQ.<br><br>3.  VIOLATION OF CAL. BUS. & PROF. § 17200, ET SEQ. (Unlawful, Unfair, and Fraudulent Prongs)<br><br>4.  VIOLATION OF CAL. BUS. & PROF. § 17500, ET SEQ. (False and Misleading Advertising)<br><br>5.  VIOLATION OF CAL. CIV. CODE § 1750, ET SEQ. (Consumers Legal Remedies Act) |

1     Plaintiff Jonathon Goldman (hereafter "Plaintiff"), individually and on behalf of
2  all other similarly situated individuals (hereafter the "Class"), brings this consumer class
3  action against Peloton Interactive, Inc. (hereafter "Defendant"), and Does 1 through 10,
4  inclusive (sometimes collectively referred to herein as "Defendants") and alleges as
5  follows:

6  <u>**INTRODUCTION AND NATURE OF THE CASE**</u>

7     1.    This lawsuit is designed to redress the harm done to consumers nationwide
8  as a result of Defendant's unfair and fraudulent business practices related to the Peloton
9  brand stationary bikes and treadmills (collectively hereafter "the Product(s)").

10     2.    Defendant's Products feature a large HD screen that allows consumers to
11  stream videos of Peloton's cycling classes, and other cardio and strength workouts.
12  Consumers are required to pay a monthly subscription fee ($39 per month) to access
13  thousands of Peloton workout videos either live or on-demand.

14     3.    These workout videos and related content are the key to the Peloton brand
15  as the company positioned itself to be the "Netflix for fitness." Defendant views itself as
16  a technology/media company, not as an exercise equipment company. Music is the
17  central component of Defendant's live and on-demand workout classes (and the
18  "Peloton experience").  Peloton users "consistently rank [music] as one of the top
19  aspects of the brand".  In fact, Defendants have deeply integrated music into the
20  Product's interface—allowing users to search for workouts by music genre, as well as
21  artist-specific playlists. Users can even preview the playlist for a specific class, "like" a
22  song or playlist during their workout, and then save songs and playlists to their user
23  profile.  In other words, music is critical to consumers' use and enjoyment of the
24  Products.

25     4.    On March 19, 2019 over a dozen music publishers banded together to sue
26  Defendant in the Southern District of New York for more than $150 million, alleging
27  that Defendant engaged in copyright infringement by using over 1,000 popular songs by

28

artists, including Rihanna, Bruno Mars, Lady Gaga, Katy Perry, Justin Timberlake, Ed Sheeran, Ariana Grande, Justin Bieber, Drake and others, but failed to pay for their use.

5. Unfortunately for consumers, on March 25, 2019, Defendant announced it had decided to remove workout videos and classes from its Products that utilized any of the over 1,000 popular songs that were identified by the publishers in the lawsuit. This decision resulted in the removal of a substantial number of classes from the Products and has significantly diminished user's experience with the Products.

6. Despite incorporating music as the central component of the Peloton Experience, the infringement lawsuit revealed that Defendant concealed from consumers and omitted material facts that Defendant lacked the appropriate intellectual property rights to thousands of the most popular songs by famous artists. That deception has allowed Defendants to charge consumers a premium price of hundreds, if not thousands, of dollars compared to similar bike and treadmill products.

7. In order to remedy the Defendant's decision to not secure the required intellectual property rights to certain music and artists, and conceal that material information from consumers, Plaintiff brings this suit on behalf of himself and all other similarly situated residents of the United States and the State of California (collectively the "Class" or "Class Members").

## JURISDICTION AND VENUE

8. Defendant contends that this Court has original jurisdiction over all causes of action pursuant to the Class Action Fairness Action ("CAFA"), 28 U.S.C. §1332(d)(2). Specifically, the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and at least one member of the putative class is a citizen of a State different than Defendant. *See* Dkt. No. 1, Notice of Removal.

9. Defendant contends that venue is proper in this District pursuant to 28 U.S.C. § 1441(a), because this District embraces the Superior Court of California, Los Angeles County, where this action was originally filed. *See* Dkt. No. 1, Notice of Removal.

## THE PARTIES

10.    Plaintiff is an individual residing in the State of California.   Plaintiff purchased one Peloton stationary bike at a Peloton retail store in Century City, Los Angeles, California for personal use in California during the Class Period.  In doing so, Plaintiff relied upon Defendant's website, advertising and other promotional materials, which were jointly prepared and approved by Defendants and their agents and disseminated through advertising media, and the internet, containing the misrepresentations alleged herein.  Plaintiff would not have purchased the Product if he had known that Defendant would remove and limit music in its Products.

11.    Defendant Peloton Interactive Inc. is a Delaware corporation with its principal office or place of business in New York, NY. At times relevant to this Complaint, Defendant has advertised, marketed, and sold a variety of consumer products, including the Products at issue, to consumers throughout the United States and the State of California.  Defendant has sold the Products directly to consumers via the Internet, as well as through company-owned, brick-and-mortar, retail showrooms throughout the United States, including in this District. Defendant transacts or has transacted business in this District, and throughout the United States. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California and this District.

## FACTUAL ALLEGATIONS

### The Indoor Cycling Industry Boom

12.    In addition to making exercise more enjoyable, it is well-known that music is tied to increased exercise performance. Numerous studies have demonstrated that synchronous music tends to drive exercise intensity (i.e., the faster the beat, the higher the intensity). *See* https://www.acefitness.org/certifiednewsarticle/805/ace-sponsored-research-exploring-the-effects-of.

13.    Costas Karageorghis, Ph.D., from London's Brunel University School of Sport and Education, one of the world's leading authorities on music and exercise, has

identified three primary things about music that could possibly influence exercise performance: 1) the tendency to move in time with synchronous sounds (e.g., tapping your toe in time with music or the beat of a drum); 2) the tendency of music to increase arousal (e.g., the desire to move rather than to sit); and 3) the tendency for music to distract the exerciser from discomfort that might be related to exercise.  *Id.*

14.    According to Carl Foster, Ph.D., of the University of Wisconsin, La Crosse, Exercise and Health Program, this information has been utilized for generations. "You go all the way back to rowers on the Roman Galleys… The guy is sitting there beating on his drum and he drives the basic rhythm of the rowing. Part of that is coordination—you want the rowers to row together—but part of it is that people will naturally follow a tempo. It's just something about the way our brains work." *Id.*

15.    Seizing on this science, companies such as SoulCycle have created a multi-billion dollar per year indoor cycling fitness class industry.  The central component to that industry is music.

16.    For instance, SoulCycle's SEC filing in connection with its abandoned IPO characterizes its product as a "carefully curated 'cardio party' [that] is fueled by the personalities of our instructors, their uniquely crafted musical playlists and the energy of the room" and says that "[w]ith inspirational coaching and high-energy music, SoulCycle was created to strengthen both the mind and the body." SoulCycle's instructors go as far as to claim that music "is the most important part of what we do at SoulCycle." *See* "SoulCycle IPO Highlights Opportunities In Music Licensing" (https://medium.com/@DMPGroup/soulcycle-ipo-highlights-opportunities-in-music-licensing-afda736a2992).

17.    In order to play music in fitness classes and gyms, companies like SoulCycle obtain licenses from ASCAP and BMI, the two largest U.S. performing rights organizations ("PROs"). The fees they pay fall under "general licensing," an umbrella classification used by the PROs to cover bars, restaurants, hotels, concert venues, sports arenas and other businesses not classified as television, radio or new

media.

18.     ASCAP and BMI charge fitness clubs flat fees annually for such licenses. In the case of BMI that license fee

**Defendant and the Peloton Products**

19.     According to Defendant, "Peloton sits at the nexus of technology, media, and fitness."  Launching in 2012,  Defendant sells high-end, indoor stationary bikes ("Peloton Bike") starting at $2,245 and treadmills ("Peloton Tread") starting at $4,295. Purchasers of the Peloton Bike and Peloton Tread must also purchase "memberships" at $39 a month. The memberships provide unlimited access to live and on-demand classes that Defendant produces using its own instructors.

20.     Defendant bills the Products as providing all the camaraderie and routines of a real-world fitness class in the convenience of a user's home. The defining feature of the Products' is a Wi-Fi–enabled, HD-touchscreen tablet that streams live and on-demand classes.  The touchscreen allows users to compete with other participants, track their workouts and health statistics, as well as connect virtually with one another.  In essence, Defendant attempts to recreate the "SoulCycle" experience at home.

21.     In order to take advantage of the touchscreen interface, metrics, and access content, buyers of the Products must purchase the Peloton membership service. Otherwise, the Products are more akin to standard exercise bikes and treadmills costing substantially less.

22.     Peloton operates an indoor cycling studio in New York City, at which members of the public take instructor-led group cycling classes which are streamed in real-time to home riders of the Peloton Bikes. Those live streamed classes are also recorded and archived in Peloton's on-demand library for later consumption by home users.

23.     Defendant's patents focus on the streaming technology and interface of its products, as opposed to the equipment itself. In other words, Peloton has built its entire brand around the content, streaming technology and media associated with Products and

1  the Peloton Experience.

2      24.   Sales of the Products have exploded. Defendants have sold hundreds of

3  thousands of units of the Bikes, recently launching the Tread.  Reports from Peloton's

4  chief operating officer, Tom Cortese, indicate that annual sales have "doubled or

5  tripled" every year since 2014, topping $800 million in 2018.

6      25.   Defendant sells the Products online and in over 60 retail locations in the

7  United States that Defendant calls "Showrooms", with plans to open over 100 more in

8  2019.  *See*   https://finance.yahoo.com/news/peloton-to-open-more-physical-stores-in-

9  2019-as-it-prepares-for-an-ipo-200522667.html

10     26.   In 2019, Defendant filed a registration statement for an initial-public

11  offering.

12  **Peloton Uses Music to Build Its Brand**

13     27.   Music is the central component to Defendant's Products and consumers'

14  experience with Defendant's Products.  In a recent interview with CNBC, Peloton CEO

15  John Foley said the idea of Peloton was born out of his experience with studio cycling

16  classes and that a key tenet driving the actual product development was his observation

17  that "what seemed to draw people to those expensive cycling classes was usually a

18  favorite    instructor    or    music    playlist    more    than    the    brand    itself."

19  https://observer.com/2019/03/peloton-bike-sued-music-copyright-infringement-150m-

20  damage/.

21     28.   Defendant has publicly stated that: "Our Members have embraced music as

22  central to the Peloton experience and consistently rank it as one of the top aspects of the

23  brand". *See, e.g., Peloton Acquires Neurotic Media LLC To Enhance Its Members'*

24  *Music Experience*. (June 27, 2018)  https://www.neuroticmedia.com/peloton-acquires-

25  neurotic-media-llc-to-enhance-its-members-music-experience/.

26     29.   To the end, Defendant advertises that its workout classes and videos:

27

28

a.   use "an inspiring soundtrack that will lift your spirit, transform your body, and clear your mind." *See* https://support.onepeloton.com/hc/en-us/articles/201319045-Peloton-Bike-Class-Descriptions; and

b.   "Our rides span a variety of instructors, style and music to keep you engaged." *See* https://www.onepeloton.com/bike/classes.

30.   Defendant's television advertising campaign for the Products features a variety of popular music, fueling the workouts featured in the commercials, including:

a.   "The Fighter" – Keith Urban (https://www.ispot.tv/ad/otTr/peloton-milestones-song-by-keith-urban-carrie-underwood);

b.   "Juice" – Lizzo (https://www.ispot.tv/ad/ot3m/peloton-membership-song-by-lizzo);

c.   "Fire" – Barns Courtney (https://www.ispot.tv/ad/otcT/peloton-live-classes-song-by-barns-courtney);

d.   "Thunderstruck" – AC/DC (https://www.ispot.tv/ad/Inxq/peloton-tread-uncharted-song-by-ac-dc);

e.   "You Don't Know" – Leon Bridges (https://www.ispot.tv/ad/INVz/peloton-instructors-song-by-leon-bridges);

f.   "On to the Next One" – Jay Z (https://www.ispot.tv/ad/dfnS/peloton-on-to-the-next-song-by-jay-z);

g.   "Blizkrieg Bop" – The Ramones (https://www.ispot.tv/ad/w0Ln/peloton-hello-lets-go-song-by-the-ramones)

h.   "Crazy Little Thing Called Love" – Meghan Trainor (https://www.ispot.tv/ad/dmq9/peloton-his-and-hers);

31.   Defendant has spent tens of millions of dollars on advertising that has associated Pelton with music.  According to Kantar Media, Defendant spent $70 million on paid media in 2018 and $50 million on media in 2017.

32.   Defendant has deeply integrated music into the user interface of the Products.  Specifically, Defendants' software allows users to search for workouts by

music genre, as well as artist-specific playlists. Users can even preview the playlist for a specific class, "like" a song or playlist during their workout, and then save songs and playlists to their user profile.

33.     In a February 2019 blog post announcing its new "Track Love" feature that allows members to add songs they hear in class to their own playlists and sync them with Apple Music or Spotify, Defendant stated: "Music is what moves us. Whether you're powering through an interval on the Bike, charging up a hill on the Tread, or navigating your morning commute, music gives you that extra energy to get to where you're going." *See* https://blog.onepeloton.com/peloton-track-love/.

34.     In sum, music is critical to consumers' use and enjoyment of the Products.

**Music Publishers Sue Peloton**

35.     Despite the importance of music to the Peloton Experience, Defendant omitted from consumers that it lacked the requisite intellectual property rights to thousands of popular songs. On March 19, 2019, over a dozen music publishers sued Defendant in a copyright infringement action in the Southern District of New York. *See Downtown Music Publishing LLC et al v. Peloton Interactive Inc.*, Case No. 1:19-cv-02426, Dkt. No. 1 (S.D.N.Y.).

36.     The publishers alleged that Defendant used over 1,000 copyrighted songs without paying for so-called synchronization licenses to use those songs in Defendant's workout videos. The suit claims that songs used by Defendant include those by popular artists like Rihanna, Bruno Mars, Lady Gaga, Katy Perry, Justin Timberlake, Ed Sheeran, Ariana Grande, Justin Bieber, Drake and others.

37.     In a statement issued about the lawsuit, National Music Publishers' Association (NMPA) President & CEO David Israelite said, "Music is a core part of the Peloton business model and is responsible for much of the brand's swift success. Thousands of exclusive videos and playlists are a major reason hundreds of thousands of people have purchased Peloton products."

38.     On March 25, 2019, in response to the lawsuit, Defendant announced that

1 "we have decided to remove classes that feature songs that were identified by these
2 publishers."

3     39.    According to Mr. Israelite, Peloton knew it needed sync licenses because it
4 did actually obtain them for many songs — and therefore knowingly acted improperly.
5 He stated: "It's the most perplexing question as to why this company would know it
6 needs a license, as proven by the fact that they went out and got licenses from some
7 publishers, and be willing to use so many songs for which they did not have a license in
8 their programming," he said. "I have no idea as to why they would behave that way. It's
9 inexplicable."

10     40.    Other industry experts agree that this was no oversight by Defendant, but
11 rather the result a cost-benefit analysis.  Unlike the standardized general licensing fees
12 that fitness clubs pay, there are no set fees are associated with synchronization licenses,
13 and content owners can negotiate a business' proposed rate. *See* "What Was Peloton
14 Thinking?"        (https://medium.com/@futuremgmt/what-was-peloton-thinking-
15 44d07405e817) .

16     41.    According to branding expert and strategist Kate Newlin:  "There was
17 probably a fair amount of cost savings involved in only doing it right half the time...
18 Incompetence is the simplest explanation, but it doesn't hold up if they did it right some
19 of the time." *Id*.

20     42.    The *Downtown Music Publishing LLC et al v. Peloton Interactive Inc.*
21 matter is still in its early stages and it may be years until the music in question is
22 available on the Products.   Plaintiff and members of the proposed Class are left in the
23 middle with Products that are no longer worth what they paid.

24     43.    Defendant's concealment duped consumers as to the content available on
25 the Products and its abrupt decision to remove thousands of classes resulted in
26 significant substantial portions of users' bookmarked classes and saved "rides" to be
27 deleted.

28     44.    Not surprisingly many users are "furious" about by Defendant's actions.

*See* "Peloton took down workout classes featuring songs at the center of a $150 million lawsuit, and some users are furious." *Business Insider* (March 27, 2019)(accessible at: https://www.businessinsider.com/peloton-removes-classes-member-outcry-2019-3).

45. In one article entitled: "Peloton owners are pissed about bad music after copyright lawsuit" users have reported that music often repeats, and in all is "a significant downgrade in music quality, with remixed versions of a popular song instead of an original, or limited song variety from an artist." https://www.theverge.com/2019/4/24/18514036/peloton-music-copyright-fitness-studios-gym-on-demand-media-strategy.

46. One user, Ally, a full-time working mom, "It has affected the way I work out… I paid a considerable amount of money [for Peloton] and I expect a premium experience." *Id.*

47. Many users have taken to reddit and Facebook to vent about the music post-lawsuit. One article, " 'Terrible Tunes': Peloton Users Furious After Luxury Fitness Machines Get Low-Rent Playlists", states that one dissatisfied customer wrote, "I bought this bike because I like to ride to good music and now I'm forced to ride to terrible tunes." *See* https://gizmodo.com/terrible-tunes-peloton-users-furious-after-luxury-fitn-1834280999.

48. Another user suggested the instructors are trying to "spin" the changing song selection. "Had anyone noticed it's like the instructors are trying to convince you it's good when we both know it's not as good?" the redditor posted. "They seem to make a lot of comments like, 'This is a band you've never heard of, but it's awesome!' and 'Whoever knew____ could sound like this?' It's awkward." *Id*

49. Unfortunately for consumers, despite paying the same monthly fee for membership, and thousands of dollars for their "premium" Peloton Bike or Tread, users have lost access to many of the classes from their favorite instructors, their saved rides, bookmarked classes and playlists, and, in all, have access to a significantly smaller library of classes and music. To this day, Defendant still does not advise consumers

what music and artists are unavailable on the Products and continues to charge the same prices for the Products.

**Plaintiff's Purchase of the Product**

50.     Plaintiff purchased a Peloton bike, "The Works" package of accessories, and cycling shoes at the Century City, Los Angles Peloton retail store in or about January 5, 2018 through a 39-month service plan. The total cost of Plaintiff's bike, accessories, shoes, shipping ($250) and tax totaled $2,964.00. Prior to purchasing the Product, Plaintiff saw, heard and relied upon advertisements, representations and statements made by Defendant regarding the workout videos available, including the music available.

51.     In choosing to purchase the Product, Plaintiff relied on Defendant's claims referenced herein.

52.     Plaintiff has suffered injury in fact and lost money as a result of Defendant's conduct described herein.  Plaintiff would not have purchased the Products or would not have paid as much for the Products if he had known that Defendant concealed that it lacked the intellectual property rights to thousands of popular songs and popular artists.

53.     Defendant has indicated that intends to move to compel arbitration of Plaintiff's claims.  At the time Plaintiff purchased the Product at the Peloton retail store, he was not presented with, nor did he consent to, any written terms of service, including, without limitation, any arbitration agreement.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this class action on behalf of himself, and as a class action on behalf of the following putative classes (collectively the "Class" or "Classes"):

**Nationwide Class**
All individual residents of the United States who purchased the Peloton Products from March 2015 through March 24, 2019.    Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting California State Court Judge or Justice, and the current spouse and all other persons within the

third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

**Nationwide Retail Purchaser Sub-Class**
All individual residents of the United States who purchased the Peloton Products at a Peloton retail store from March 2015 through March 24, 2019.    Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting California State Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

**California  Sub-Class**
All individual residents of the State of California who purchased the Peloton Products from March 2015 through March 24, 2019.    Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting California State Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

**California  Retail Purchaser Sub-Class**
All individual residents of the State of California who purchased the Peloton Products at a Peloton retail store from March 2015 through March 24, 2019. Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting California State Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

55.    Numerosity: Plaintiff does not know the exact number of members of the putative Classes.  Due to the nature of the trade and commerce involved, however, Plaintiff is informed and believes that the total number of Class members is at least in the hundreds of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and California.  While the exact number and identities of the Class members are unknown at this time, such information

can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

56.   <u>Notice:</u> If necessary, notice of this action may be affected to the proposed Class through publication in a manner authorized in the California Rules of Court, Civil Code, and/or the Federal Rules of Civil Procedure.  Also, Class members may be notified of the pendency of this action by mail and/or email, through the distribution records of Defendant, third party retailers, and vendors.

57.   <u>Typicality:</u> Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff does not have any interests that are antagonistic to those of the proposed Class.  Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

58.   <u>Commonality and Predominance:</u> The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

   a.   whether Defendants claimed that the Products will provide workout videos, including music;

   b.   whether the use of music in Defendants' Products is material to consumers;

   c.   whether Defendants concealed that it lacked the rights to use thousands of songs that are the subject of the intellectual property lawsuit against Defendant filed in March 2019;

   d.   whether Defendants' advertising and marketing claims set forth above are unlawful, untrue, or are misleading, or reasonably likely to deceive;

   e.   whether Defendants' conduct is fraudulent and/or violates public policy;

   f.   whether Defendants' engaged in unfair, unlawful and/or fraudulent business practices in marketing and distributing the Products;

g. whether Defendants' knew or should have known that the representations were false;

h. whether Defendants engaged in false advertising with respect to the Products;

i. whether Defendants' knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Products;

j. whether Defendants' representations, concealments and non-disclosures concerning the Products are likely to deceive the consumer;

k. whether Defendants' representations, concealments and non-disclosures concerning the Products violate the common law, the GBL, CLRA, FAL and/or the UCL;

l. whether Defendants should be permanently enjoined from making the claims at issue; and

m. whether Plaintiff and the Class are entitled to statutory damages under the N.Y. GBL;

n. whether Plaintiff and the Class are entitled to restitution and damages.

59.   Superiority: A class action is the superior method for the fair and just adjudication of this controversy.  The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

60.   <u>Manageability</u>: The trial and litigation of Plaintiff's and the proposed Class's claims are manageable.  Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF N.Y. GENERAL BUSINESS LAW
### (N.Y. GEN BUS. LAW § 349, *et seq.*)

61.   Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

62.   Plaintiff brings this claim individually and on behalf of the proposed National Classes against Defendants.

63.   New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

64.   Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

65.   The practices employed by Defendant, described above, whereby, among other things it concealed that it lacked the intellectual property rights to thousands of popular songs and popular artists, are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

66.   The foregoing deceptive acts and practices were directed at consumers.

67.   The foregoing deceptive acts and practices proximately caused Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

68.     Defendant should be enjoined and required to disclose to consumers the music and/or artists that are unavailable on the Products  pursuant to NY GBL § 349.

69.     Plaintiff and the Class respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

### VIOLATION OF N.Y. GENERAL BUSINESS LAW
#### (N.Y. GEN BUS. LAW § 349, *et seq.*)

70.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the proposed National Classes against Defendants.

72.     Defendant has been and/or is engaged in the "conduct of ... business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

73.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect," taking into account the extent to which the advertising fails to reveal facts material in light of ... representations [made] with respect to the commodity ..." N.Y. Gen. Bus. Law § 350-a(1).

74.     Defendant caused to be disseminated throughout California, New York and the United States, through advertising, marketing and other publications, statements that

1    were untrue and/or misleading.

2    75.    Defendant's concealments that it lacked the requisite intellectual property

3 rights to thousands of popular songs is material and substantially uniform in content,

4 presentation, and impact upon consumers at large. Consumers purchasing the Products

5 were exposed to Defendant's material deceptions and omissions.

6    76.    Defendant has violated N.Y. Gen. Bus. Law § 350 because Defendant

7 concealed material information from consumers and its promotion of the Products is

8 likely to deceive a reasonable consumer.

9    77.    Plaintiff and Class members have suffered an injury, including the loss of

10 money or property, as a result of Defendant's false and misleading advertising and

11 omissions.

12    78.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek

13 monetary damages (including actual damages and minimum, punitive, or treble and/or

14 statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and

15 disgorgement of all monies obtained by means of Defendant's unlawful conduct,

16 interest, and attorneys' fees and costs.

17

18                           **THIRD CAUSE OF ACTION**

19               **VIOLATION OF UNFAIR COMPETITION LAW**
                  **(CAL. BUS. & PROF. CODE § 17200,** *et seq.***)**

20             **(Unlawful, Unfair, and Fraudulent Prongs of the Act)**

21    79.    Plaintiff incorporates by this reference the allegations contained in the

22 preceding paragraphs as if fully set forth herein.

23    80.    Plaintiff brings this claim individually and on behalf of the proposed

24 California Subclasses Class against Defendants.

25    81.    California Business and Professions Code § 17200 prohibits any "unfair,

26 deceptive, untrue or misleading advertising." For the reasons discussed above,

27 Defendants have engaged in unfair, deceptive, untrue and misleading advertising in

28 violation of California Business & Professions Code §17200.

82.     As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions. Specifically, Plaintiff purchased the Products for his own personal use.  In so doing, Plaintiff relied upon the representations regarding music referenced above. Plaintiff would not have purchased the Products or would not have paid as much for the Products had he known that Defendant concealed that it lacked the intellectual property rights to thousands of popular songs and popular artists and would remove substantial amounts of music and workout videos containing popular music from its Products.

83.     **Unlawful Business Practices:** The actions of Defendants, as alleged herein, constitute illegal and unlawful practices committed in violation of the Business & Professions Code §17200.

84.     Defendants' have committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code § 17200 et seq., Business & Professions Code § 17500, et seq., Civil Code §1750, and the common law.

85.     In addition, Defendants have unlawfully manufactured, advertised, and disseminated false advertisements of the Products, and that the product advertising and packaging contain false or misleading statements about the Products in violation of Bus. & Prof. Code § 17500, Civil Code §1750, which govern Defendant's conduct.

86.     Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

87.     **Unfair Business Practices**: California Business & Professions Code § 17200 also prohibits any "unfair ... business act or practice."

88.     Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is

1  substantially injurious to consumers, offends public policy, and is immoral, unethical,
2  oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged
3  benefits attributable to such conduct.

4      89.    There were reasonably available alternatives to further Defendants'
5  legitimate business interests, other than the conduct described herein.

6      90.    **Fraudulent Business Practices**: California Business & Professions Code §
7  17200 also prohibits any "fraudulent business act or practice."

8      91.    Defendants' claims, nondisclosures and misleading statements with respect
9  to the Products, as more fully set forth above, were false, misleading and/or likely to
10 deceive the consuming public within the meaning of Business & Professions Code §
11 17200.

12     92.    Defendants' conduct caused substantial injury to Plaintiff and the other
13 Class members. Plaintiff has suffered injury in fact and has lost money as a result of
14 Defendants' unfair conduct.

15     93.    Pursuant to section 17203 of the California Business & Professions Code,
16 Plaintiff and the Class seek an order of this court enjoining Defendants from continuing
17 to engage in unlawful, unfair, or deceptive business practices and any other act
18 prohibited by law, including, but not limited to: (a) selling, marketing, or advertising the
19 Products with false representations set forth above; (b) engaging in any of the illegal,
20 fraudulent, misleading, unlawful, unfair and/or deceptive conduct described herein; and
21 (c) engaging in any other conduct found by the Court to be illegal, fraudulent,
22 misleading, unlawful, unfair and/or deceptive conduct.

23     94.    In addition, Plaintiff requests that this Court enter such orders or judgments
24 as may be necessary to restore to any person in interest any money which may have
25 been acquired by means of such illegal practices as provided in Business & Professions
26 Code § 17203, and for such other relief as set forth below.

27     95.    Plaintiff engaged counsel to prosecute this action and is entitled to recover
28 costs and reasonable attorney's fees according to proof at trial.

### FOURTH CAUSE OF ACTION

**FALSE AND MISLEADING ADVERTISING**
**(CAL. BUS. & PROF. CODE § 17500, *et seq.*)**

96.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

97.    Plaintiff brings this claim individually and on behalf of the proposed California Subclasses against Defendants.

98.    As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions. Specifically, Plaintiff purchased the Products for his own personal use.  In so doing, Plaintiff relied upon the representations regarding music referenced above. Plaintiff would not have purchased the Products or would not have paid as much for the Products had he known that Defendant concealed that it lacked the intellectual property rights to thousands of popular songs and popular artists and would remove substantial amounts of music and workout videos containing popular music from its Products.

99.    Defendants violated Business & Professions Code § 17500 by publicly disseminating false and misleading advertisements regarding the Products.

100.   Defendants' false and misleading advertisements were disseminated to increase the sales of the Products.

101.   Defendants knew or should have known that their advertisements for the Products were false and misleading and that those advertisements would induce consumers to purchase the Products. Such advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code § 17500.

102.   Furthermore, Defendants publicly disseminated the false and misleading advertisements as part of a plan or scheme and with the intent to sell unproven and ineffective products.

103.   Plaintiff and the members of the Class have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for

1   the Products that they otherwise would not have incurred or paid.

2      104.   Defendants are aware, or by the exercise of reasonable care should have

3 been aware, that the representations (including, without limitation, the claim that the

4 Products could offer certain music, when they could not) were untrue or misleading and

5 that such conduct is in violation of the current injunction.

6      105.   Plaintiff and the members of the Class have suffered injury in fact and have

7 lost money as a result of Defendant's false representations and false advertising.

8      106.   Pursuant to Business & Professions Code § 17535, Plaintiff and the

9 members of the putative Class seek an order of this Court enjoining Defendant from

10 continuing to engage, use, or employ their practice of advertising the Products.

11      107.   Likewise, Plaintiff and the members of the putative Class seek an order

12 requiring Defendant to disclose such misrepresentations, and additionally request an

13 order awarding Plaintiff and other members of the putative class restitution of the

14 money wrongfully acquired by Defendants by means of responsibility attached to

15 Defendants' failure to disclose the existence and significance of said misrepresentations.

### FIFTH CAUSE OF ACTION

**VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750 et seq.)**

19      108.   Plaintiff incorporates by this reference the allegations contained in the

20 preceding paragraphs as if fully set forth herein.

21      109.   Plaintiff brings this claim individually and on behalf of the proposed

22 California Subclasses against Defendants.

23      110.   Plaintiff is a consumer as defined by California Civil Code § 1761(d). The

24 Products are goods within the meaning of the Act.  Specifically, prior to the filing of

25 this action, as alleged herein, Plaintiff purchased the Products for his own personal use.

26 In so doing, Plaintiff relied upon the representations regarding music referenced above.

27 Plaintiff would not have purchased the Products or would not have paid as much for the

28 Products had he known that Defendant concealed that it lacked the intellectual property

1 rights to thousands of popular songs and popular artists and would remove substantial

2 amounts of music and workout videos containing popular music from its Products.

3 111.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in

4 fact and have lost money or property as a result of Defendants' actions as set forth

5 herein.

6 112.   Plaintiff has concurrently filed the original complaint declaration of venue

7 required by Civil Code §1780(d) with this complaint.

8 113.   Defendants have violated and continue to violate the CLRA by engaging in

9 the following practices proscribed by California Civil Code §1770(a) in transactions

10 with Plaintiff and the Class which were intended to result in, and did result in, the sale

11 of the Products:

12 §1770(a) (5) Representing that [The Product(s) have] ... characteristics, ...

13 uses [or] benefits ... which [it does] not have ... .

14 §1770(a) (7) Representing that [the Product(s) are] of a particular standard,

15 quality or grade ... if [it is] of another.

16 114.   Defendants violated the CLRA by representing through its advertisements

17 of the Products as described above, when they knew, or should have known, that the

18 representations and advertisements were false and misleading.

19 115.   Concurrent with the filing of the original Complaint, Plaintiff sent

20 Defendant notice advising Defendant that it violated section 1770 of the CLRA (the

21 "Notice"). The Notice complied in all respects with section 1782 of the CLRA. Plaintiff

22 sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at

23 Defendant's place of business. The Notice advised Defendant advised Defendant it must

24 correct, repair, replace or otherwise rectify its conduct alleged to be in violation of

25 Section 1770. However, Defendant failed to do so within thirty (30) days of receipt of

26 the Notice. Plaintiff is, therefore, now seeking actual damages.

27 116.   Plaintiff and the members of the putative Class have each been directly and

28 proximately injured by the conduct of Defendants, and such injury includes payment for

1   units of the Products they purchased.

2       117.   Defendants' wrongful business practices constituted, and constitute, a

3   continuing course of conduct in violation of the CLRA. Pursuant to Civil Code §

4   1782(d), plaintiff and the Class seek a Court order enjoining the above-described

5   wrongful acts and practices of Defendants along with any other conduct found by the

6   Court to be illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

7       118.   Plaintiff engaged counsel to prosecute this action and is entitled to recover

8   costs and reasonable attorney's fees according to proof at trial.

9

10                              **<u>PRAYER FOR RELIEF</u>**

11      WHEREFORE, Plaintiff, on behalf of himself and as representative of all other

12   persons similarly situated, prays for judgment against Defendants, as follows:

13      1.     An order certifying that the action may be maintained as a Class Action;

14      2.     An order enjoining Defendants from pursuing the policies, acts, and

15   practices complained of herein;

16      3.     An order requiring Defendants to pay statutory damages to Plaintiff and all

17   members of the Class on the First Cause of Action only;

18      4.     An order requiring Defendants to pay restitution to Plaintiff and all

19   members of the Class;

20      5.     An order requiring Defendants to pay damages to Plaintiff and all members

21   of the Class on the Fifth Cause of Action only;

22      6.     For pre-judgment interest from the date of filing this suit;

23      7.     For reasonable attorneys' fees;

24      8.     Costs of this suit; and,

25      9.     Such other and further relief as the Court may deem necessary and

26   appropriate.

27

28

DATED: July 24, 2019                    **MILSTEIN JACKSON FAIRCHILD & WADE. LLP**

                                        By:   /s/Gillian L. Wade
                                              Gillian L. Wade
                                              Sara D. Avila
                                              Marc A. Castaneda

                                              Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.


DATED: July 24, 2019                    **MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

                                        By:   /s/Gillian L. Wade
                                              Gillian L. Wade
                                              Sara D. Avila
                                              Marc A. Castaneda

                                              Attorneys for Plaintiff