1

**HUESTON HENNIGAN LLP**
Steven N. Feldman (State Bar No. 281405)
2   sfeldman@hueston.com
Sourabh Mishra (State Bar No. 305185)
3   smishra@hueston.com
Annie N. Banks (State Bar No. 313215)
4   abanks@hueston.com
523 West 6th Street, Suite 400
5   Los Angeles, CA 90014
Telephone:   (213) 788-4340
6   Facsimile:   (888) 775-0898

7   *Attorneys for Defendant Peloton Interactive, Inc.*

8

9

10

11

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

12

13   JONATHON GOLDMAN, individually
and on behalf of all others similarly
situated,

14

15                    Plaintiffs,

16        vs.

17   PELOTON INTERACTIVE, INC., and
DOES 1-10, Inclusive,

18                    Defendants.

19

20

21

22

23

24

25

26

27

28

Case No. 2:19-cv-04968-AB-AS

Hon. André Birotte Jr.

**DEFENDANT PELOTON INTERACTIVE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

(Removed from: Superior Court of the State of California, County of Los Angeles, Case No: 19STCV10972)

Hearing Date: October 11, 2019
Hearing Time: 10:00 a.m.

Courtroom: 7B

- 1 -

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 11, 2019, at 10:00 a.m., or as soon thereafter as may be heard, in Courtroom 7B of the above-entitled Court, located in the United States Courthouse, 350 West First Street, Los Angeles, California 90012, Defendant Peloton Interactive, Inc. ("Peloton") will and hereby does move the Court for an Order dismissing Plaintiff Jonathan Goldman's ("Plaintiff") First Amended Class Action Complaint without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Brad Olson and Declaration of Sourabh Mishra ("Mishra Decl."; ECF 14) filed in Support of Peloton's Motion to Compel Individual Arbitration (ECF 12), the pleadings and papers filed in this action, and such other matters as may be presented to the Court at the time of or before the hearing.

Peloton's counsel and Plaintiff's counsel telephonically met and conferred about the bases for this Motion on July 2, 2019. (Mishra Decl. ¶ 2.) The parties then stipulated to Plaintiff's filing of a First Amended Complaint. (ECF 8.) Peloton's counsel and Plaintiff's counsel again telephonically met and conferred about the bases for this Motion on August 1, 2019. (Mishra Decl. ¶ 3.) The parties could not reach agreement. (*Id.*)

Dated: August 9, 2019          HUESTON HENNIGAN LLP


                                By:  */s/ Steven N. Feldman*

                                    Steven N. Feldman

                                    *Attorneys for Defendant Peloton
                                    Interactive, Inc.*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL BACKGROUND ....................................................................... 4

        A.     Peloton Has Revolutionized the Fitness Industry .................................. 4

        B.     Peloton Users Agree to its Terms of Service ......................................... 4

        C.     Peloton Discloses in its Terms of Service That It Does Not
               Guarantee Any Content ........................................................................ 5

        D.     Plaintiff's Complaint Challenges Peloton's Content
               Offerings ............................................................................................... 6

III.    LEGAL STANDARD ................................................................................. 7

IV.     ARGUMENT ............................................................................................. 7

        A.     Plaintiff's California Claims Must be Dismissed ................................... 7

               1.     Plaintiff Fails to Plead Deception ................................................. 7

               2.     Plaintiff Fails to Plead Reliance ................................................. 13

               3.     Plaintiff Fails to Plead Injury .................................................... 15

        B.     Plaintiff's New York Claims Must Be Dismissed ............................... 17

               1.     Plaintiff Lacks Standing to Bring the New York
                      Claims ....................................................................................... 17

               2.     Plaintiff's New York Claims Fail for the Same
                      Reasons as His California Claims ............................................... 19

V.      CONCLUSION ........................................................................................ 22

5606401

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ........................................................................ 6, 8, 10

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) ............................................................ 9

*Baltazar v. Apple, Inc.*,
    No. 10-cv-03231, 2011 WL 6747884 (N.D. Cal. Aug. 25, 2011) .................. 9

*Barakezyan v. BMW of N. Am., LLC*, No. 16-cv-00173, 2016 WL
    2840803 (C.D. Cal. Apr. 7, 2016) ......................................................... passim

*Baron v. Pfizer, Inc.*,
    840 N.Y.S.2d 445 (N.Y. App. Div. 2007) .............................................. 20, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 8, 10

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ........................................................................ 16

*Borba v. Sherman Thomas*,
    70 Cal. App. 3d 144 (Cal. Ct. App. 1977) .................................................... 10

*Cafasso ex. rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................................... 13

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
    824 F3d 1156 (9th Cir. 2016) ......................................................................... 6

*Carlsen v. GameStop, Inc.*,
    112 F. Supp. 3d 855 (D. Minn. 2015) ........................................................... 15

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ........................................................................ 6

*Cohen v. DIRECTV, Inc.*,
    178 Cal. App. 4th 966 (Cal. Ct. App. 2009) ................................................. 12

## TABLE OF AUTHORITIES (cont.)

Page(s)

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (Cal. Ct. App. 2011) ...................................................... 9

*Cook, Perkiss & Leihe, Inc. v. N. Cal. Collection Serv., Inc.*,
  911 F.2d 242 (9th Cir. 1990) ........................................................................... 11

*Cruz v. Anheuser-Busch, LLC*,
  No. 14-cv-09670, 2015 WL 3561536 (C.D. Cal. June 3, 2015) ...................... 6

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ........................................................................................ 17

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (Cal. Ct. App. 2006) ............................................... 2, 9

*Davis*,
  691 F.3d ............................................................................................................ 9

*Derbaremdiker v. Applebee's Intern., Inc.*,
  No. 12-cv-1058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ................... 19

*Dimond v. Darden Rests., Inc.*,
  No. 13-cv-5244, 2014 WL 3377105 (S.D.N.Y. July 9, 2014)................... 18, 19

*Dix v. Nova Benefit Plans, LLC*,
  No. 14-cv-08678, 2015 WL 12859221 (C.D. Cal. Apr. 28, 2015) ................. 9

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995).......................................................................... 2, 7, 9

*Gomez-Jimenez v. N.Y. Law Sch.*,
  943 N.Y.S.2d 834 (N.Y. Sup. Ct. 2012) ........................................................ 21

*Harris v. CVS Pharmacy*,
  2015 WL 4694047 (C.D. Cal. Aug. 6, 2015)............................................. 3, 17

*Haskell v. Time, Inc.*,
  857 F.Supp. 1392 (E.D. Cal. 1994)................................................................. 11

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
  No. 09-mdl-2007, 2009 WL 9502003 (C.D. Cal. July 6, 2009) ................... 18

- iii -
NOTICE OF REMOVAL

5606401

1

TABLE OF AUTHORITIES (cont.)

2

Page(s)

3
4

*In re Apple & AT & TM Antitrust Litig.*,
  596 F. Supp. 2d 1288 (N.D. Cal. 2008) ........................................................ 18

5
6

*In re Ditropan LX Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2008) ........................................................ 18

7

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................................ 18

8
9

*In re iPhone 4S Consumer Litig.*,
  637 Fed. App'x. 414 (9th Cir. 2016) ............................................................ 14

10
11

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014) ............................................................ 3, 15

12
13
14

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection
    HDTV Television Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) ........................................................ 13

15
16

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) .......................................................... 15

17

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (Cal. 2009) ........................................................................ 12

18
19

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011).................................................... 8, 10

20
21

*Janda v. T-Mobile USA, Inc.*,
  378 F. App'x 705 (9th Cir. 2010) ............................................................ 7, 9

22
23

*Kearns v. Ford Motor Co.*,
  567 F3d 1120 (9th Cir. 2009)............................................................ 2, 12, 13

24
25

*Kickertz v. New York Univ.*,
  110 A.D.3d 268 (N.Y. App. Div. 2013)........................................................ 20

26
27

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (Cal. 2011) .................................................................. 12, 14

28

*Lassen v. Nissan N. Am.*, Inc.,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016).................................................... 3, 15

- iv -

5606401

TABLE OF AUTHORITIES (cont.)

Page(s)

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (Cal. Ct. App. 2003) .............................................. 7, 12

*Lewis v. Casey*,
  518 U.S. 343 (1996) ....................................................................................... 17

*Lewis v. Hertz Corp.*,
  581 N.Y.S.2d 305 (N.Y. App. Div. 1992)...................................................... 19

*Lum v. New Century Mortg. Corp.*,
  800 N.Y.S.2d 408 (N.Y. App. Div. 2005)................................................... 2, 20

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (Cal. 2009) ........................................................................... 14

*New York. Goshen v. Mut. Life Ins,*
  *. of N.Y.*, 98 N.Y.2d 314 (2002).................................................................. 3, 17

*Nguyen v. Barnes & Noble Inc.*,
  No. 12-cv-812, 2015 WL 12766050 (C.D. Cal. Nov. 23, 2015) ....... 3, 4, 5, 17

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
  *N.A.*,
  85 N.Y.2d 20 (1995).......................................................................................18

*Pelman v. McDonald's Corp.*,
  237 F. Supp. 2d 512 (S.D.N.Y. 2003)............................................................ 18

*Sand v. Ticketmaster–N.Y., Inc.*,
  616 N.Y.S.2d 362 (N.Y. App. Div. 1994)...................................................... 19

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985).................................................................... 2, 13

*Shovak v. Long Is. Commercial Bank*,
  858 N.Y.S.2d 660 (N.Y. App. Div. 2008)...................................................... 19

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43 (N.Y. App. Div. 1999)............................................................. 20

*Sokoloff v. Town Sports Int'l, Inc.*,
  778 N.Y.S.2d 9 (N.Y. App. Div. 2004)......................................................... 21

- v -

NOTICE OF REMOVAL

<u>TABLE OF AUTHORITIES (cont.)</u>

<u>Page(s)</u>

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ............................................................................ 21

*Vitt v. Apple Computer, Inc.*,
    469 Fed. App'x 605 (9th Cir. 2012) .............................................................. 11

*Wofford v. Apple Inc.*,
    No. 11–cv–0034, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ................ 6, 16

*Zearfoss v. Rubbermaid, Inc.*,
    No. 2:18-cv-06392, 2018 WL 8731935 (C.D. Cal. Dec. 21, 2018) ............... 12

*Zuckerman v. BMG Direct Mktg., Inc.*,
    737 N.Y.S.2d 14 (N.Y. App. Div. 2002) ........................................................ 19

**<u>Statutes</u>**

N.Y. Gen. Bus. Law §§ 349 & 350 .................................................................. passim

**<u>Rules</u>**

Federal Rule of Civil Procedure 9(b) ................................................................ 2, 12

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 6, 8

NOTICE OF REMOVAL

5606401

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Jonathon Goldman[1] ("Plaintiff") purchased a high-end, indoor stationary bike from Defendant Peloton Interactive, Inc. ("Peloton") in January 2019. The Peloton bike is the first ever at-home exercise bike that incorporates a sophisticated graphical user interface—presented on a 22-inch HD, multitouch tablet—that displays live and on-demand cycling classes led by some of the world's best instructors.

As part of his purchase and use of the Peloton bike, Plaintiff agreed to Peloton's Terms of Service, which contained a clear statement that Peloton does not guarantee the availability of any content—including its library of classes and the music used in its classes—on its platform for any amount of time.

In March 2019, in response to an unmeritorious lawsuit by certain music publishers, Peloton removed a portion of classes from its library and decided to no longer use the music-at-issue during the pendency of that lawsuit. Plaintiff filed suit thereafter, claiming that he would not have purchased the Peloton bike in January 2019 if he knew that Peloton did not have the intellectual property rights to use a subset of the music it used in its classes.

As an initial matter, Plaintiff's claims must be arbitrated—as set forth in Peloton's Motion to Compel Arbitration[2]—because Plaintiff agreed to a binding, clear and valid arbitration agreement, stating that "any dispute, claim or controversy arising out of or relating to" Peloton's Terms of Service would be subject only to

---

[1] Peloton informed Plaintiff that Mr. Goldman's name is likely misspelled in the operative complaint – "Jonathon" rather than "Jonathan" – and asked them to correct the error since they were already filing an errata correcting his year of purchase from 2018 to 2019. Decl. of Sourabh Mishra in Support of Def. Peloton's Mot. to Compel Individual Arbitration ¶ 5, ECF 14 ("Mishra Decl."). Plaintiff's counsel stated that though it could be a misspelling, they preferred not to change it at this time. *Id.*

[2] ECF 12.

PELOTON'S MOTION TO DISMISS FAC

5117543

1  mandatory, individual arbitration. If the Court grants Peloton's Motion to Compel

2  Arbitration, it need not consider this Motion to Dismiss.

3      To the extent the Court denies the Motion to Compel Arbitration, however,

4  Peloton submits this Motion to Dismiss, pursuant to Federal Rule of Civil Procedure

5  12(b)(6), because Plaintiff's claims—brought under California and New York law—

6  are all fatally flawed. They should therefore be dismissed with prejudice.

7      *First*, Plaintiff fails to plead actual deception. In order to plead an actionable

8  misrepresentation or omission, a plaintiff must show that members of the public were

9  likely to be deceived by the business practice or advertising at issue. *Freeman v.*

10 *Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). But Peloton's Terms of Service clearly

11 state that Peloton can (and may) remove or alter content at any time and does not

12 guarantee the existence of any content or music on its platform. Courts routinely

13 dismiss when presented with such disclosures. *See Barakezyan v. BMW of N. Am.,*

14 *LLC*, No. 16-cv-00173, 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016); *Lum v. New*

15 *Century Mortg. Corp.*, 800 N.Y.S.2d 408 (N.Y. App. Div. 2005). Plaintiff's attempt

16 to characterize the deception as an omission does not save his claim because the

17 alleged omission (that Peloton could remove content because it did not hold the

18 rights to music) is consistent with the disclosure (that Peloton can remove content).

19 *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (Cal. Ct. App.

20 2006) (requiring the omission to be contrary to the representation).

21     *Second*, Plaintiff fails to plead reliance. Federal Rule of Civil Procedure 9(b)

22 applies to Plaintiff's claims. *See Kearns v. Ford Motor Co.*, 567 F3d 1120, 1124 (9th

23 Cir. 2009). Yet Plaintiff has failed to allege "who, what, when, where, and how" he

24 was purportedly mislead. Rather, Plaintiff's broad and unspecific allegations do not

25 provide Peloton, or the Court, with notice of the particular misconduct alleged to

26 have misled Plaintiff. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

27 Simply put, because "Plaintiff cannot point to a single representation made by"

28 Peloton where it claimed that any particular workout video, or song, or artist would

be available on its platform, his claims must be dismissed. *See Barakezyan*, 2016 WL 2840803, at \*12.

*Third*, Plaintiff fails to sufficiently plead injury. Plaintiff's claims that he "would not have purchased the Products or would not have paid as much for the Products" but for the alleged misrepresentations or omissions of Peloton. *E.g.*, Pl. First Am. Class Action Compl. ¶ 52, ECF 10 (filed July 24, 2019) ("Complaint" or "FAC"). Courts find such theories insufficient to survive the pleading stage. *Lassen v. Nissan N. Am.*, Inc., 211 F. Supp. 3d 1267, 1274 (C.D. Cal. 2016). Moreover, Plaintiff does not allege facts to establish how his Peloton product has decreased in value; he just speculates that it has. Again, this is insufficient. *See In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014).

*Fourth*, Plaintiff does not have standing to bring his New York claims. "Standing is claim specific and 'a plaintiff must demonstrate standing for each claim he seeks to press.'" *Harris v. CVS Pharmacy*, 2015 WL 4694047, at \*4 (C.D. Cal. Aug. 6, 2015) (Birotte, J.). Plaintiff's New York claims are brought under N.Y. Gen. Bus. Law §§ 349 & 350, both of which require that Plaintiff allege deception *in New York*. *Goshen v. Mut. Life Ins. of N.Y.*, 98 N.Y.2d 314, 324 (2002). Here, other than alleging that Peloton is headquartered in New York, Plaintiff does not plead any facts that connect his claims to New York. In fact, Plaintiff admits that he purchased the Peloton product in Los Angeles, California, and resides in the State of California. Confronted with such facts, courts uniformly dismiss New York claims. *Nguyen v. Barnes & Noble Inc.*, No. 12-cv-812, 2015 WL 12766050, at \*3-4 (C.D. Cal. Nov. 23, 2015) (dismissing §§ 349 & 350 claims premised on defendant's website's advertisement where only connection to New York was that defendant had its headquarters and principle place of business in New York and the parties' contract was governed by New York law).

## II.     FACTUAL BACKGROUND

### A.     Peloton Has Revolutionized the Fitness Industry

Headquartered in New York City, Peloton is a revolutionary technology company that has transformed the fitness industry by developing and selling unique in-home fitness products. *See* Decl. of Brad Olson in Support of Def. Peloton's Mot. to Compel Individual Arbitration ¶ 2, ECF 13 ("Olson Decl."). It sells cycling bikes and treadmills ("Peloton Products") with state-of-the-art technology that allows users from the comfort of their homes to experience live and on-demand classes led by some of the world's best instructors ("Peloton Content"). *Id.*

Consumers can purchase Peloton Products online on Peloton's website (www.onepeloton.com) or at physical Peloton showrooms throughout the United States, including in New York and California. Pl. First Am. Class Action Compl. ¶ 25, ECF 10 (filed July 24, 2019) ("Complaint" or "FAC"). The Peloton Bike, at issue here, costs approximately $2245 to purchase, plus approximately $39 per month for a subscription to its vast array of classes. *Id.* ¶ 19.

### B.     Peloton Users Agree to its Terms of Service

Peloton's relationship with its consumers is governed by the Peloton Terms of Service. Olson Decl. ¶ 3. Consumers must expressly agree to the Peloton Terms of Service before use. *Id.* ¶ 4.

5117543

Upon turning on the Peloton Products and signing into their account, Peloton provides consumers with a hyperlink to the Terms of Service and prompts consumers to agree expressly to the Terms of Service:



*Id.*; *id.* Ex. A. Consumers are <u>not</u> permitted to use the Peloton Content unless they agree to the Terms of Service. *Id.* ¶ 4. If the Terms of Service change, Peloton provides consumers with a link to the new Terms of Service on the Peloton Products and prompts them to agree to the updated Terms of Service before any further use of the Peloton Content.[3] *Id.*

## C. Peloton Discloses in its Terms of Service That It Does Not Guarantee Any Content

Plaintiff purchased a Peloton Product in or about January 5, 2019. FAC ¶ 50.[4] The Peloton Terms of Service in place at that time were issued on September 14,

---

[3] Not agreeing to the updated Terms of Service only limits a consumers' ability to use the Peloton Content; the consumer can still use the "just ride" function (*i.e.* use the Peloton Product without the live or on-demand classes). *Id.*

[4] *See* Not. of Errata re: First Amended Class Action Complaint at 1, ECF 11 (filed Aug. 8, 2019) ("The correct year of [Plaintiff's] purchase is 2019. Accordingly, the year '2018' is hereby replaced with '2019' in Paragraph 50 of the FAC").

2018. Olson Decl. ¶ 6-7; *id.* Ex. C (the "Terms of Service"). Plaintiff agreed to the Terms of Service. *Id.* ¶ 7; *id.* Ex. D.

The Terms of Service make clear that Peloton can in its "sole discretion" alter or remove any content, including music and classes:

> Peloton reserves the right to modify the Peloton Service, including, but not limited to updating, adding to, enhancing, modifying, removing or altering any Content or features of the Peloton Service, at any time, in its sole discretion. . . . . Peloton has no obligation to screen or monitor any Content and does not guarantee that any Content available on the Peloton Service is suitable for all users or that it will continue to be available for any length of time. Peloton provides the Peloton Service on an "AS IS" and "AS AVAILABLE" basis.

> You therefore use the Peloton Service at your own risk. Other than as expressly provided in writing by Peloton in connection with your purchase of a Peloton product, to the extent permitted by law, Peloton expressly disclaims any and all warranties of any kind, whether express or implied, including, but not limited to implied warranties of merchantability, fitness for a particular purpose, noninfringement, quiet enjoyment and any other warranty that might arise under any law. .

Terms of Service § 15.

## D.    Plaintiff's Complaint Challenges Peloton's Content Offerings

In his FAC, Plaintiff claims that he purchased a Peloton Product in or about January 5, 2019 and relied on Peloton's claims that it would provide "an inspiring soundtrack that will lift your spirit, transform your body, and clear your mind." FAC ¶¶ 29, 50.[5]

On March 25, 2019—in the midst of a dispute with certain music publishers—Peloton "decided to remove classes that feature songs that were identified by the[] publishers." *Id.* ¶ 38. Plaintiff claims that if he knew that Peloton did not have intellectual property rights to the music that was removed in March 2019, he would not have purchased his Peloton product in January 2019. *Id.* ¶ 52.

---

[5] Plaintiff filed a Notice of Errata on August 8, 2019 correcting the reference in paragraph 50 of the FAC from 2018 to 2019. (ECF 11.) Plaintiff's counsel admits that Mr. Goldman purchased his bike in 2019. (Mishra Decl. ¶ 4; *id.* Ex. A.)

### III.   **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In considering a Rule 12(b)(6) motion to dismiss, "it is not proper for the court to assume that the plaintiff can prove facts that he or she has not alleged or that defendants have violated the laws in ways that have not been alleged." *Wofford v. Apple Inc.*, No. 11–cv–0034, 2011 WL 5445054, at *1 (S.D. Cal. Nov. 9, 2011).

A Rule 12(b)(6) dismissal is proper when the complaint fails to allege sufficient facts "to support a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F3d 1156, 1159 (9th Cir. 2016). "[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Cruz v. Anheuser-Busch, LLC*, No. 14-cv-09670, 2015 WL 3561536, at *7 (C.D. Cal. June 3, 2015) (Birotte, J.) (granting motion to dismiss UCL, FAL, and CLRA claims without leave to amend).

### IV.   **ARGUMENT**

Plaintiff pleads five causes of action against Peloton: three arising under California law (FAC ¶¶ 79-118); and two arising under New York law (FAC ¶¶ 61-78). All fail and thus must be dismissed with prejudice.

#### A.   **Plaintiff's California Claims Must be Dismissed**

Plaintiff's California claims fail for three independent reasons: (1) failure to plead deception; (2) failure to plead reliance; and (3) failure to plead injury.

##### 1.   Plaintiff Fails to Plead Deception

All three of Plaintiff's California claims require him to plead an actionable misrepresentation or omission. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.

1  1995) (affirming dismissal of UCL, FAL, and CLRA claims); *Janda v. T-Mobile*

2  *USA, Inc.*, 378 F. App'x 705, 707 (9th Cir. 2010) (same).

3       In order to plead an actionable misrepresentation or omission, a plaintiff must

4  show that members of the public were likely to be deceived by the business practice

5  or advertising at issue. *Freeman*, 68 F.3d at 289. "'Likely to deceive' implies more

6  than a mere possibility that the advertisement might conceivably be misunderstood . .

7  . . Rather, the phrase indicates that the ad is such that it is probable that a significant

8  portion of the general consuming public or of targeted consumers, acting reasonably

9  in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.

10  App. 4th 496, 508 (Cal. Ct. App. 2003); *Freeman*, 68 F.3d at 289 (applying

11  reasonable consumer standard in evaluating UCL, FAL, and CLRA claims).

12       Here, Plaintiff's California claims must be dismissed because Plaintiff does

13  not plead an actionable deception by Peloton.

14       *First*, the disclosures in Peloton's Terms of Service bar Plaintiff's arguments

15  about misrepresentation and omission.

16       Plaintiff's UCL, FAL, and CLRA claims all depend on the allegation that

17  Peloton "concealed that it lacked the intellectual property rights to thousands of

18  popular songs and popular artists and would remove substantial amounts of music

19  and workout videos containing popular music from its Products." FAC ¶ 82 (Third

20  Cause of Action under UCL); *id.* ¶ 98 (Fourth Cause of Action under FAL) (same);

21  *id.* ¶ 110 (Fifth Cause of Action under CLRA) (same).[6]

22

23

---

24  [6] Plaintiff's Complaint is rife with conclusory statements lacking any factual allegation. *E.g.,* FAC ¶ 84 ("Defendants have committed unlawful business practices

25  by . . . making the representations and omissions of material facts"); *id.* ¶ 85 ("Defendants have unlawfully manufactured, advertised, and disseminated false

26  advertisements of the Products"). In resolving a Rule 12(b)(6) motion to dismiss, a court must disregard such allegations. *In re Toyota Motor Corp.*, 785 F. Supp. 2d

27  883, 910 (C.D. Cal. 2011) (court must not "accept as true a legal conclusion couched as a factual allegation") (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009)

28  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

- 8 -

5117543

1       But Peloton's Terms of Service clearly provide that Peloton, at its sole

2 discretion, may modify the Peloton Classes, including the specific content (songs or

3 artists) featured therein. Terms of Service ¶ 15 ("Peloton reserves the right to modify

4 the Peloton Service, including, but not limited to updating, adding to, enhancing,

5 modifying, ***removing*** or altering ***any Content*** or features of the Peloton Service, ***at***

6 ***any time, in its sole discretion***") (emphasis added). Additionally, the Terms of

7 Service state unambiguously:

8     •   That Peloton does not guarantee the availability of any class, song, or artist

9         (*Id.* ("Peloton . . . does not guarantee that any Content available on the Peloton

10         Service . . . will continue to be available for any length of time.")); and

11     •   That no particular content is guaranteed, for any amount of time (*Id.* ("Peloton

12         makes no representations or warranties [] . . . [t]hat the Peloton Service will be

13         uninterrupted or error-free [, or] [c]oncerning any Content, . . . [or] [t]hat the

14         Peloton Service will meet your personal or professional needs [, or] [t]hat

15         Peloton will continue to support any particular feature of the Peloton

16         Service.")).

17       Plaintiff's claim that Peloton did not disclose that it could remove its content

18 for any reason is thus directly contrary to the representations made by Peloton in its

19 Terms of Service. In such situations, courts routinely dismiss UCL, FAL, and CLRA

20 claims. *See, e.g., Barakezyan*, 2016 WL 2840803, at 12 (dismissing CLRA and UCL

21 claims where defendant "disclosed the potential for brake noise in its owner's

22 manual, the same manual that Plaintiff and all consumers had access to at the

23 dealership before purchase and eventually online"); *Davis*, 691 F.3d at 1161–62

24 (finding that a defendant's advertising "was not likely to deceive a reasonable

25 consumer" where consumers were informed "[o]ther restrictions may apply");

26 *Freeman*, 68 F.3d at 289-90 (dismissing UCL and CLRA claims due to clear

27 qualifying language); *Baltazar v. Apple, Inc.*, No. 10-cv-03231, 2011 WL 6747884,

28 at *4-6 (N.D. Cal. Aug. 25, 2011) (dismissing UCL claims due to clear disclaimers);

*Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705, 707 (9th Cir. 2010) (dismissing UCL, FAL, and CLRA claims with prejudice because of defendant's disclosures); *see also Dix v. Nova Benefit Plans, LLC*, No. 14-cv-08678, 2015 WL 12859221, at *9 (C.D. Cal. Apr. 28, 2015) (Birotte, J.) (dismissing UCL and FAL claims without leave to amend because of "clear and unequivocal disclaimers"); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014) (dismissing CLRA and UCL claims premised on alleged omission of information where information allegedly omitted was available in an internet news article).

Plaintiff cannot save his claim by styling it as an omission, rather than a misrepresentation. For an omission to be actionable, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty*, 144 Cal. App. 4th at 835. But as stated above, that Peloton did not have a license to all of its music is *consistent* with—not contrary to—the fact that it did not guarantee any content for any period of time. And Plaintiff does not plead any facts that establish that Peloton had a duty to disclose the facts of its licenses and nonlicenses to him. *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (Cal. Ct. App. 2011) (setting forth the standard for a duty to disclose).

*Second*, "an actionable misrepresentation must be made as to past or existing facts." *Borba v. Sherman Thomas*, 70 Cal. App. 3d 144, 152 (Cal. Ct. App. 1977) ("[p]redictions as to future events . . . are not actionable"). Thus, statements regarding future events cannot form the basis for a *prima facie* showing of misrepresentation. *Id.*

Here, Plaintiff alleges that Peloton "concealed that it lacked the intellectual property rights to thousands of popular songs and popular artists and would remove substantial amounts of music and workout videos containing popular music from its Products." FAC ¶¶ 82, 98, 110. But this is an allegation about a prediction as to future events—Plaintiff is claiming that he was misled as to what Peloton would or

- 10 -

would not do in the future. As this alleged concealment relates not to past or existing facts, but rather, to future conduct, it fails as a matter of law. *Borba*, 70 Cal. App. 3d at 152.

*Third*, though Plaintiff's claims are premised on his allegation that Peloton "lacked the intellectual property rights to thousands of popular songs and popular artists," (FAC ¶¶ 52, 65, 82, 98, 110) he does not allege facts supporting this conclusory allegation.

Plaintiff's only support for this assertion is the existence of a separate litigation that Plaintiff describes as "***alleging*** that Defendant engaged in copyright infringement." FAC ¶ 4 (emphasis added). But because this is a mere legal conclusion couched as a factual allegation, it must be disregarded for purposes of a motion to dismiss. *In re Toyota Motor Corp*., 785 F. Supp. 2d at 910 (court must not "accept as true a legal conclusion couched as a factual allegation") (quoting *Ashcroft*, 129 S.Ct. at 1949–50 (2009) (quoting *Twombly*, 550 U.S. at 555)).

Indeed, none of the facts that Plaintiff alleges in any way supports his allegations that Peloton "concealed that it lacked the intellectual property rights to thousands of popular songs and popular artists and would remove substantial amounts of music and workout videos containing popular music from its Products." FAC ¶¶ 82, 98, 110. Instead, Plaintiff relies only on general and vague statements allegedly made by Peloton.

For example, Plaintiff claims that Peloton's advertisements stated: "Our rides span a variety of instructors, style and music to keep you engaged" and that its classes use "an inspiring soundtrack that will lift your spirit, transform your body, and clear your mind." FAC ¶ 29. Plaintiff also claims Peloton's blog stated: "Music is what moves us. Whether you're powering through an interval on the Bike, charging up a hill on the Tread, or navigating your morning commute, music gives you that extra energy to get to where you're going." FAC ¶ 33.

PELOTON'S MOTION TO DISMISS FAC

5117543

There is nothing in these statements about Peloton having any intellectual property rights. *E.g.*, FAC ¶ 65. Nor do these statements state anything about "popular songs and popular artists" being available through Peloton's Products or classes. *Id*. Instead, these statements contain genera and vague terms ("variety," "extra" and "inspiring") that could at best amount to non-actionable puffery. *Barakezyan*, 2016 WL 2840803, at *12 ("[T]hese alleged actionable misrepresentations are vague and part of BMW's generalized advertising campaign. Thus, they are not actionable."); *Vitt v. Apple Computer, Inc.*, 469 Fed. App'x 605, 607 (9th Cir. 2012) (descriptors "high value" and "ideal" were "non-actionable because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met'"); *Cook, Perkiss & Leihe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (dismissing Lanham Act false advertising claim because it was "beyond the realm of reason . . . that a reasonable consumer would interpret [the subject advertisement] as a factual claim upon which he or she could rely"); *Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1399 (E.D. Cal. 1994) (any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss, where alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery).

If Plaintiff's expectation from any of these statements was that a particular artist (*e.g.*, Justin Bieber) or a particular song (*e.g.*, one by Justin Bieber) would be available through Peloton's service, such expectation is clearly subjective and unreasonable. Such subjective expectations cannot save Plaintiff's flawed claims. *Lavie*, 105 Cal. App. 4th at 508 ("'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.").

1        2.      Plaintiff Fails to Plead Reliance

2        Plaintiff's California claims also fail because he fails to plead reliance. *See In*

3  *re Tobacco II Cases*, 46 Cal. 4th 298, 306 (Cal. 2009) (a plaintiff "must demonstrate

4  actual reliance on the allegedly deceptive or misleading statements" for UCL

5  claims); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 973 (Cal. Ct. App. 2009)

6  (same under the CLRA); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (Cal.

7  2011) ("based on a fraud theory involving false advertising and misrepresentations to

8  consumers," the UCL and FAL "require[ ] a showing of a causal connection or

9  reliance on the alleged misrepresentation").

10       To properly plead reliance, plaintiffs must allege sufficient facts demonstrating

11 that the defendant's "misrepresentation or nondisclosure was an 'immediate cause'

12 of the plaintiff's injury-producing conduct." *In re Tobacco II Cases,* 46 Cal. 4th at

13 326. Further, the misrepresentation or omission must have "played a substantial part .

14 . . in influencing his decision." *Id*.

15       Further, the heightened pleading standards of Federal Rule of Civil Procedure

16 9(b) ("Rule 9(b)") apply to Plaintiff's claims asserted under the UCL, FAL, and

17 CLRA. *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009); *Zearfoss v.*

18 *Rubbermaid, Inc*., No. 2:18-cv-06392, 2018 WL 8731935, at *3 (C.D. Cal. Dec. 21,

19 2018) (Birotte, J.) (Rule 9(b) requirements apply to UCL, FAL, and CLRA

20 requirements). Rule 9(b) requires Plaintiff to state his claims "with particularity"—

21 meaning, at a minimum, the "who, what, when, where, and how of the misconduct

22 charged." *Kearns*, 567 F.3d at 1124; *Cafasso ex. rel. United States v. Gen. Dynamics*

23 *C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (plaintiff must explain what is

24 false or misleading and why it is false); *In re Sony Grand WEGA KDF-E A10/A20*

25 *Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1092-93 (S.D.

26 Cal. 2010) (dismissing UCL, FAL, and CLRA claims where plaintiffs failed to allege

27 with particularity that the misrepresentations were misleading at the time they were

28 made). This heightened pleading standard ensures that "allegations of fraud are

5117543

1  specific enough to give defendants notice of the particular misconduct which is

2  alleged to constitute the fraud charged so that they can defend against the charge . . .

3  ." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

4      Plaintiff has not met this high burden to plead reliance with particularity. Even

5  after amending his Complaint, he still has failed to allege "who, what, when, where,

6  and how" he was purportedly mislead. Rather, Plaintiff claims in broad and

7  conclusory fashion that he "relied upon Defendant's website, advertising and other

8  promotional materials, which were jointly prepared and approved by Defendants and

9  their agents and disseminated through advertising media, and the internet, containing

10 the misrepresentations alleged herein." FAC ¶ 50. This broad allegation does not

11 provide Peloton, or the Court, with notice of the particular misconduct alleged to

12 have misled Plaintiff. *Semegen*, 780 F.2d at 731.

13      Indeed, none of the specific advertising mentioned in the FAC has anything to

14 do with the alleged intellectual property rights at issue. For example, Plaintiff claims

15 that the copyright litigation involves "over 1,000 popular songs by artists, including

16 Rihanna, Bruno Mars, Lady Gaga, Katy Perry, Justin Timberlake, Ed Sheeran,

17 Ariana Grande, Justin Bieber, [and] Drake . . . ." FAC ¶ 4; *id.* ¶ 36. But Plaintiff does

18 not (and cannot) allege that any misleading advertisement or misrepresentation ever

19 named any of these artists, let alone stated that Peloton's products were guaranteed to

20 feature such artist's music. The advertising mentioned by Plaintiff contains vague

21 references to "a variety of popular music" (*id.* ¶ 30), not any specific

22 misrepresentation relating to the alleged lack of intellectual property rights.

23      Simply put, Plaintiff cannot point to a single representation made by Peloton

24 where it claimed that any particular workout video, or song, or artist, would be

25 available. Accordingly, he has not and cannot not allege that such misrepresentation

26 or omission was the "immediate cause" of his alleged injury, nor that it played a

27 "substantial part" in influencing his decision, making his conclusory allegations that

28 he "relief on Defendant's claims referenced herein" insufficient. *Barakezyan*, 2016

WL 2840803, at *12 (dismissing claims where "Plaintiff cannot point to a single representation made by Defendants where they claimed that the carbon ceramic brakes make no noise on the road"); *In re iPhone 4S Consumer Litig.*, 637 Fed. App'x. 414, 415 (9th Cir. 2016) (affirming dismissal of CLRA, UCL, and FAL claims because "[m]erely pointing to product demonstrations of Siri in Apple's general advertising campaign is insufficient to show that Apple fraudulently misled Plaintiffs into believing Siri would perform consistently").

### 3.   Plaintiff Fails to Plead Injury

Plaintiff's California claims must also be dismissed because he failed to sufficiently plead injury. Under California law, plaintiffs must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury; and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322; *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 645 (Cal. 2009) (similarly, the CLRA requires that a plaintiff allege a "tangible increased cost or burden to the consumer").

Here, Plaintiff's claim of injury fails for three reasons.

*First*, Plaintiff's allegations of harm rely on his claim that he "would not have purchased the Products or would not have paid as much for the Products" but for the alleged misrepresentations or omissions of Peloton. *E.g.*, FAC ¶ 52. Courts have found such "overpayment" theories insufficient where they would essentially necessitate an agreement that the plaintiff never bargained for. *See Lassen*, 211 F. Supp. 3d at 1275 (rejecting plaintiffs' claim of injury on the basis that they "would either not have purchased or leased the vehicles at all or would not have paid as much for them" if the defendant hadn't omitted that the vehicles lacked a certain feature); *See Barakezyan*, 2016 WL 2840803, at *4 ("In cases such as this one, where the alleged wrong seems to stem from an assertion of insufficient performance, a

plaintiff must allege 'something more' than mere 'diminished value' to support a claim.").

*Second*, Plaintiff's claim of injury also fails because Peloton users all pay the same amount to access Peloton's classes, regardless of which songs or artists are featured on the classes that they take. *See* FAC ¶ 19. Thus, there is no "premium" or extra amount associated with the purported "popular songs and popular artists" (*id.* ¶¶ 49, 52) that Plaintiff alleges to have lost. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1177–78 (D. Minn. 2014) ("the fact that all customers regardless of payment method pay the same price renders Plaintiffs' overcharge theory implausible"); *SAIC Backup Tape Data Theft Litig.*, 45 F. Supp. 3d at 30 ("To the extent that Plaintiffs claim that some indeterminate part of their premiums went toward paying for security measures, such a claim is too flimsy to support standing. They do not maintain, moreover, that the money they paid could have or would have bought a better policy with a more bullet-proof information-security regime. Put another way, Plaintiffs have not alleged facts that show that the market value of their insurance coverage (plus security services) was somehow less than what they paid.").

*Third*, Plaintiff does not and cannot allege that the market value of what he received (a Peloton Bike and access to Peloton's classes) is less than what he paid. *Carlsen v. GameStop, Inc.*, 112 F. Supp. 3d 855, 861-62 (D. Minn. 2015) (rejecting Plaintiff's allegation that "because Defendants failed to disclose their actual practice, they delivered to Plaintiff and the Class a fundamentally less useful and less valuable service than the one they paid for" because plaintiff did "not include facts that show the market value of the subscription was less than the amount paid"). Plaintiff does not allege that certain access to Peloton's classes can be purchased for different amounts—nor could he. Indeed, he concedes that the market price for Peloton's service today—*i.e.*, that without the allegedly "popular songs and popular artists"—is still the same. FAC ¶ 49.

PELOTON'S MOTION TO DISMISS FAC

5117543

1   Plaintiff nevertheless claims injury by alleging that Peloton's products,

2   without "purchas[ing] the Peloton membership service . . . . are more akin to

3   standard exercise bikes and treadmills costing substantially less." FAC ¶ 21. This

4   allegation misses the point. Plaintiff's claims are based on the content he allegedly

5   didn't receive, which he concedes is purchased through a separate transaction than

6   that underlying his purchase of the Bike. FAC ¶ 2 ("Consumers are required to pay a

7   monthly subscription fee ($39 per month) to access thousands of Peloton workout

8   videos either live or on-demand."); *id.* ¶ 50 ("Plaintiff purchased a Peloton bike, 'The

9   Works' package of accessories, and cycling shoes . . . . The total cost of Plaintiff's

10   bike, accessories, shoes, shipping ($250) and tax totaled $2,964.00.").

11   Plaintiff's alleged injury thus stems from alleged changes to the Peloton

12   classes, not anything to do with the Bike itself. *See Wofford*, 2011 WL 5445054, at

13   *2 (rejecting argument that CLRA claim involved a sale of a good where allegations

14   stemmed from upgrade of operating system because "Plaintiffs' original purchase of

15   the iPhone is a separate transaction" from their later upgrade of the operating

16   system). And even if Plaintiff attempted to replead his claims to assert how the value

17   of the Bike purportedly diminished, such allegation would be too speculative to

18   support a cognizable injury because of differences in how consumers use Peloton's

19   Products and classes. *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) (alleged

20   diminution in value, because it depended on how individual consumers used the

21   product, was insufficient allegation of economic harm to support injury-in-fact under

22   Article III).

23   **B.   Plaintiff's New York Claims Must Be Dismissed**

24   1.   Plaintiff Lacks Standing to Bring the New York Claims

25   In federal court, "'named plaintiffs who represent a class must allege and show

26   that they' personally have standing under Article III to bring suit…." *Harris*, 2015

27   WL 4694047, at *4 (Birotte, J.) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

28   "[I]t is not enough to show that 'other, unidentified members of the class to which

- 17 -

they belong and which they purport to represent' will eventually have standing." *Id.* "Standing is claim specific and 'a plaintiff must demonstrate standing for each claim he seeks to press.'" *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Plaintiff's New York claims are brought under N.Y. Gen. Bus. Law §§ 349 and 350, both of which require that Plaintiff allege deception *in New York*. The New York Court of Appeals addressed the territorial reach of § 349 in *Goshen v. Mut. Life Ins. of N.Y.* and held that "the transaction in which the consumer is deceived must occur in New York." 98 N.Y.2d 314, 324 (2002). The same is true for § 350. *See Nguyen*, 2015 WL 12766050, at *3 (applying *Goshen* to § 350 and dismissing claim premised on Defendant's website's advertisement where only connection to New York was that defendant had its headquarters and principle place of business in New York and the parties' contract was governed by New York law).

Here, other than Peloton being headquartered in New York, Plaintiff does not plead any facts that connect his claims to New York. FAC ¶ 11. In fact, Plaintiff admits that he purchased the Peloton product in Los Angeles, California, and resides in the State of California. *Id.* ¶¶ 10, 50. There are no facts in the FAC that show that any alleged deception of Plaintiff occurred in New York.

Faced with these facts, courts uniformly dismiss for lack of standing. *See Nguyen*, 2015 WL 12766050, at *3-4; *Harris*, 2015 WL 4694047, at *4 (plaintiff could not establish that non-California statute applied to him "because Plaintiff (as the only named plaintiff in this uncertified class action) alleges that he is a resident of California who purchased the CVS-branded CoQ10 supplement in California"); *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09-mdl-2007, 2009 WL 9502003, at *6 (C.D. Cal. July 6, 2009) ("Courts routinely dismiss claims . . . where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce" because the named plaintiff lacks standing to invoke the foreign statute); *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (named

- 18 -

plaintiffs in national class action lacked standing to assert "violations of the consumer protection laws of" states where they did not reside or suffer an injury); *In re Ditropan LX Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2008) (same); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026–27 (N.D. Cal. 2007) (same).

        2.    Plaintiff's New York Claims Fail for the Same Reasons as His California Claims

Even if Plaintiff had standing to bring his New York claims (he does not), they fail for similar reasons as his California claims.

*First*, Plaintiff fails to allege sufficient "misleading" conduct under §§ 349 and 350. "To state a claim for deceptive practices under either section, a plaintiff must show . . . that the act, practice or advertisement was misleading in a material respect." *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003). A deceptive act or practice are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).[7]

As discussed above, Plaintiff's allegations cannot constitute "misleading" conduct for two independently deficient reasons.

As an initial matter, Peloton's Terms of Service expressly disclose that Peloton does not guarantee particular content or music. New York courts routinely hold that §§ 349 & 350 claims fail where defendants expressly disclose (*e.g.*, in Terms of Service) that which plaintiffs allege to have been concealed. *See, e.g., Dimond v. Darden Restaurants, Inc.*, No. 13-cv-5244, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014) ("Plaintiff's position fails to meet the objective standard under GBL § 349

---

[7] A court may determine as a matter of law whether an act or omission is misleading. *Oswego Laborers*, 85 N.Y.2d at 26; *Dimond v. Darden Rests., Inc.*, No. 13-cv-5244, 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014) (finding gratuity practice not materially misleading as a matter of law because the gratuity was "completely and conspicuously" disclosed on menu, such that patrons were "expressly informed" of dining costs).

that requires that the omission is 'likely to mislead a reasonable consumer acting reasonably under the circumstances'" because "'defendant fully disclosed the terms and conditions of an alleged deceptive transaction'"); *see also Derbaremdiker v. Applebee's Intern., Inc.*, No. 12-cv-1058, 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012) ("New York courts have dismissed claims for having failed to satisfy [the materially misleading] element where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to the plaintiff."); *Sand v. Ticketmaster–N.Y., Inc.*, 616 N.Y.S.2d 362, 364 (N.Y. App. Div. 1994) ("Although plaintiff contends defendant's fees are excessive, there is no dispute that such fees are always disclosed by Ticketmaster. Therefore, the challenged business practices do not violate the prohibition against deceptive business practices under General Business Law § 349, since the record shows that these practices are fully disclosed prior to [the sale of tickets]."); *Zuckerman v. BMG Direct Mktg., Inc.*, 737 N.Y.S.2d 14 (N.Y. App. Div. 2002) (holding that shipping and handling fees were not deceptive where those amounts were disclosed); *Lewis v. Hertz Corp.*, 581 N.Y.S.2d 305, 307 (N.Y. App. Div. 1992) ("[T]he challenged business practices [do not] violate the prohibition against deceptive business practices under General Business Law § 349, since the record shows that these practices are fully disclosed."); *Shovak v. Long Is. Commercial Bank*, 858 N.Y.S.2d 660, 664-63 (N.Y. App. Div. 2008) ("[T]here was no materially misleading statement, as the record indicated that the yield spread premium, which is not per se illegal, was fully disclosed to the plaintiff."); *Lum v. New Century Mortg. Corp.*, 800 N.Y.S.2d 408, 410 (N.Y. App. Div. 2005) ("Here, there was no materially misleading statement, as the record indicated that the [Yield Spread Premium], which is not per se illegal, was fully disclosed to the plaintiff.").

Moreover, Plaintiff claims that Peloton's acts—from before he purchased his bike in January 2019—were misleading because of actions Peloton took in March 2019. Courts reject such theories because future conduct cannot render

PELOTON'S MOTION TO DISMISS FAC

5117543

1  contemporaneously true statements false. *See Kickertz v. New York Univ.*, 110

2  A.D.3d 268, 273 (N.Y. App. Div. 2013) (rejecting plaintiff's claim that university's

3  advertising was misleading by failing to disclose potential future curriculum

4  changes).

5      *Second*, Plaintiff fails to plead an actionable injury under §§ 349 and 350. To

6  plead injury under these statutes, plaintiffs must allege economic injury beyond that

7  they would not have purchased the drug or that they were overcharged. *Baron v.*

8  *Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (N.Y. App. Div. 2007) (holding that plaintiff

9  failed to plead a cognizable injury where she alleged that "she would not have

10  purchased the drug absent defendant's deceptive practices.").

11      New York law—like California law—rejects each of Plaintiff's theories of

12  injury.

13      *First*, it rejects the argument that "consumers who buy a product that they

14  would not have purchased, absent a manufacturer's deceptive commercial practices"

15  have necessarily suffered an injury for GBL purposes. *Small v. Lorillard Tobacco*

16  *Co.*, 94 N.Y.2d 43, 56 (N.Y. App. Div. 1999) (the deceptive conduct cannot be pled

17  "as both act and injury").

18      *Second*, it does not allow plaintiffs to allege an injury under §§ 349 & 350

19  premised on speculative theories—such as here where Plaintiff argues that he may

20  have not bought a Peloton Product if he knew about Peloton's intellectual property

21  rights to music that Peloton did not guarantee would be on its platform. *Gomez-*

22  *Jimenez v. N.Y. Law Sch.*, 943 N.Y.S.2d 834, 849 (N.Y. Sup. Ct. 2012) ("benefit-of-

23  the-bargain damages must be based on the bargain that was actually struck, not on a

24  bargain whose terms must be supplied by hypotheses about what parties would have

25  done if the circumstances surrounding their transaction had been different").

26      And *third*, it dismisses conclusory claims that a consumer suffered injury

27  because it would not have purchased products or would have paid less for products.

28  *See* FAC ¶ 52; *Baron*, 840 N.Y.S.2d at 448 (plaintiff failed to allege a "cognizable

- 21 -

5117543

injury" where she claimed that "she would not have purchased the drug absent defendant's deceptive practices"); *id.* (rejecting plaintiff's "position that a theory of overpayment is enough by itself"); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (finding no injury where plaintiff "does not claim that he did not receive adequate insurance coverage or that he did not contract for the coverage he received"); *Sokoloff v. Town Sports Int'l, Inc.*, 778 N.Y.S.2d 9, 9 (N.Y. App. Div. 2004) (finding payment of membership fee was not a cognizable § 349 injury where plaintiff "d[id] not claim that defendant failed to deliver the services called for in the contract").

## V.   **CONCLUSION**

Even after amending his Complaint, Plaintiff has not and cannot allege a valid claim under any of the California or New York laws he cites. Peloton respectfully requests that this Court grant its Motion to Dismiss in its entirety, without leave to amend.

Dated: August 9, 2019

Respectfully submitted,

HUESTON HENNIGAN LLP

By:      */s/ Steven N. Feldman*

Steven N. Feldman
Attorney for Defendant Peloton Interactive, Inc.

- 22 -
PELOTON'S MOTION TO DISMISS FAC

5117543